## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| Ramon Soto, *on behalf of himself and all others similarly situated,* | : <br> : <br> : |
| Plaintiff, | : |
| vs. | : Civil Action No.: <br> : |
| GNC Holdings, LLC, | : **CLASS ACTION COMPLAINT** |
| Defendant. | : <br> : |

For this Class Action Complaint, Plaintiff Ramon Soto, by undersigned counsel, states as follows:

## INTRODUCTION

1.      Defendant GNC Holdings, LLC ("Defendant" or "GNC") formulates, manufactures, advertises and sells "Super Magnesium" dietary supplements (the "Magnesium Supplements" or "Supplements") throughout the United States.   The labels on the Supplements claim that one serving consisting of two (2) caplets contain 400 mg of elemental magnesium.

2.      But the Magnesium Supplements do not contain 400 mg of elemental magnesium in a single 2 caplet serving and thus do not contain the quantity of magnesium that is advertised, and thus warranted, on each of the product's labels.   Instead, Plaintiff's counsel's independent investigation reveals the Supplements contain approximately 152 mg of elemental magnesium per serving, significantly less magnesium than what is claimed and displayed on the product's labels.

3.      In misstating the magnesium content of the Supplements, GNC violates federal law and regulations designed to prevent deceptive supplement labeling and breaches the express warranty created by its labeling.   Defendant's conduct also constitutes fraudulent concealment, unjust enrichment and violations of the Illinois Consumer Fraud and Deceptive Business Practices

Act, 815 Ill. Comp. Stat. 505/1, et seq. Defendant's prominent misrepresentations regarding its Magnesium Supplements form a pattern of unlawful and unfair business practices that visits harm on the consuming public.

## PARTIES

4.  Plaintiff Ramon Soto ("Plaintiff" or "Mr. Soto") is and at all times relevant hereto was an adult individual residing in and domiciled in Chicago, Illinois. Mr. Soto has purchased GNC's Super Magnesium Supplement within the last four years, including at a GNC retail store located in Chicago, Illinois. Mr. Soto viewed the front and back label of Defendant's Supplements on each occasion that he purchased the product during the Class Period.

5.  Defendant GNC Holdings, LLC ("GNC" or "Defendant") is a Delaware business entity with a principal place of business 75 Hopper Place, Suite 501, Pittsburgh, PA 15222. From its Pennsylvania headquarters GNC markets, advertises, distributes and sells its Supplements throughout the United States, including in Illinois.

## JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005: (1) during the Class Period GNC sold its Magnesium Supplements to more than 100 people, (2) in the same period those sales, combined with Plaintiff's requested injunctive relief, punitive damages and attorneys' fees, exceeds $5,000,000, and (iii) there is minimal diversity because Plaintiff and Class Members, and Defendant are citizens of different states. Specifically, Plaintiff is a citizen of Illinois and Defendant is a citizen of Pennsylvania.

7.  Venue is proper in this District and this Court has personal jurisdiction over GNC because Plaintiff purchased the product at issue in this case and viewed GNC's representations

within this District.

## **FACTUAL ALLEGATIONS**

### *a. Defendant's Magnesium Supplements do not contain 400 mg of magnesium*

8.      The amount of magnesium contained within Defendant's Magnesium Supplements is material to any consumer seeking to purchase the Magnesium Supplements.

9.      As set forth in the images below, GNC labels and advertises its Magnesium Supplements as containing 400mg of magnesium.   As set forth in the below image, on the front label of the Supplements GNC states that the "Super Magnesium" supplements contain "400 mg Per two caplets":



      10.     On the "Supplement Facts" label GNC likewise claims that a single serving of 2

caplets of the Supplements contains "400mg" of "Magnesium (as Aspartate, Lactate and

Citrate)"[1]:



---

[1] *See* https://ods.od.nih.gov/factsheets/Magnesium-HealthProfessional/ (the U.S. Department of Health & Human Services directs that "[t]he Supplement Facts panel on a dietary supplement label declares the amount of elemental magnesium in the product, not the weight of the entire magnesium-containing compound.") (last visited May 1, 2024).

11.     As reflected above, the Supplement Facts represent that the listed 400 mg of elemental magnesium constitutes 95% of the recommended Daily Value of magnesium.   Under 21 C.F.R. § 101.9(c)(8), addressing "[t]he requirements related to including a statement of the amount per serving of vitamins and minerals," "[t]he quantitative amounts of vitamins and minerals, excluding sodium, shall be the amount of the vitamin or mineral included in one serving of the product, using the units of measurement and the levels of significance given in paragraph (c)(8)(iv) of this section." 21 C.F.R. § 101.9(c)(8)(iii). With respect to magnesium, the recommended Daily Value for adults and children four years and older is 420 milligrams (mg) of magnesium. 21 C.F.R. § 101.9(c)(8) (iv).

12.     On its website, GNC claims that "GNC Super Magnesium is one of the easiest ways to get 95% of your daily magnesium in convenient caplets with no gluten, dairy, or soy."[2]

13.     The above representations on the Supplements' front and back labels constitute an express warranty regarding the Magnesium Supplements' magnesium content.

14.     However,  Defendant's representations that a three-capsule single serving of the Magnesium Supplements contains 400 mg of elemental magnesium is false.

15.     Independent testing reveals the Supplements contain approximately 5.85% elemental magnesium by mass.

16.     Two caplets of the Supplements collectively weigh approximately 2,600 mg.

17.     Thus, one 2-caplet serving of the Supplements contains approximately 152 mg of elemental magnesium, not 400 mg of magnesium as advertised.

---

[2] https://www.gnc.com/magnesium/136913.html (last visited April 30, 2024).

**b. *GNC knew that its Supplements contain less magnesium than advertised***

18.     GNC is a multinational nutritional supplement company with thousands of locations across the country. It claims that it rigorously tests its products.

19.     For instance, GNC states on its website that pursuant to its "Truth in Labeling Policy" "GNC scientists, nutritionists and quality assurance professionals independently verify all claims made on our labels."[3]

20.     Moreover, in 2016 the Federal Trade Commission announced that "[t]he world's largest dietary supplement retailer, GNC Holdings Inc. (GNC), has entered into a wide-ranging agreement with the Department of Justice to reform its practices related to potentially unlawful dietary ingredients and dietary supplements, and has further promised to embark on a series of voluntary initiatives designed to improve the quality and purity of dietary supplements, the Department of Justice announced today.   The non-prosecution agreement resolves GNC's liability for selling certain dietary supplements produced by a firm currently under indictment."[4]

21.     Likewise, in 2015, in response to an investigation by the New York Attorney General, GNC announced that it would "put in place additional quality-control measures to restore the trust of its customers" and "it would use advanced DNA testing to authenticate all of the plants that are used in its store-brand herbal supplements, and extensively test the products for common allergens like tree nuts, soy and wheat. In addition, GNC will submit semiannual reports proving that it is complying with the attorney general's demands."[5]

---

[3] https://www.gnc.com/about-gnc/about-us.html#testing-modal (last visited May 1, 2024).
[4] https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/press-releases/december-7-2016-gnc-enters-agreement-department-justice-improve-its-practices-and-keep-potentially (last visited May 1, 2024).
[5] https://archive.nytimes.com/well.blogs.nytimes.com/2015/03/30/gnc-to-strengthen-

22.     Given GNC's claims that it regularly tests its products and verifies the claims made on its labels, GNC knew or should have known that the amount of magnesium contained within one serving of its Supplements was significantly less than the advertised and warranted 400 mg.

### c. *Defendant's Supplements are misbranded*

23.     The above misrepresentations regarding the contents and ingredients of Defendant's Magnesium Supplements are unlawful under both state and federal law.   The Federal Food, Drug, and Cosmetic Act ("FDCA'), passed by Congress in 1938, grants the Food and Drug Administration ("FDA") power to ensure "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A).   In 1990, Congress amended the FDCA with the Nutrition Labeling and Education Act ("NLEA"), which sought to clarify and strengthen the FDA's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods. 21 U.S.C. §§ 343, et seq.

24.     GNC's false and deceptive statements violate 21 U.S.C. § 343(a)(1), which deems food (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular." Federal regulations also dictate the manner in which Defendant must label its product and the methods it must use to determine the magnesium contents of its product. Defendant failed to ensure the accuracy of its Magnesium Supplements' labels in accordance with these federal regulations.

25.     GNC's representations regarding the magnesium contents of its Magnesium Supplements – including its representation that there are 400 mg of magnesium in two (2) caplets – are material. Reasonable consumers of Magnesium Supplements base their purchasing decisions

---

supplement-quality-controls/ (last visited May 1, 2024).

on the advertised and warranted amount of magnesium contain therein.  Additionally, consumers reasonably rely of Defendant's label to accurately determine the amount of any dietary ingredients included within the Defendant's Magnesium Supplements. Accordingly, Plaintiff and Class Members, as reasonable consumers, were materially misled by Defendant's representations regarding the true nature and composition of the Magnesium Supplements' magnesium contents.

26.     Further, such misrepresentations also breach Defendant's express warranty that each serving of the Magnesium Supplements contains 400 mg of elemental magnesium.

27.     The difference between the Magnesium Supplements promised and the products sold is significant and material because the sold products contain less than half of the 400 mg of magnesium per serving advertised and warranted. The amount of actual magnesium provided, and the measure of magnesium per serving, has real impacts on the benefits provided to consumers by the Magnesium Supplements and the actual value of the Supplements. Persons requiring a certain amount of magnesium are left to ingest significantly less than   magnesium than they were lead to believe.

28.     Because Plaintiff and Class Members purchased a product that contains less magnesium than advertised and warranted, Plaintiff and Class Members have suffered an injury-in-fact and have paid a price premium for the Supplements. Misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a restitution refund of the purchase price of the misbranded nutritional supplements. Additionally, had Plaintiff and Class Members known the true nature and composition  of the magnesium content of the Magnesium Supplements, they would not have purchased such Products, or would have only paid for the magnesium from

magnesium actually delivered with the Supplements.

29.     On March 28, 2024, Plaintiff mailed a letter to Defendant via certified mail providing pre-suit notice of the nature and factual basis for his claims under, *inter alia*, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, et seq. and breach of express and implied warranty laws.   He demanded, *inter alia,* "that GNC immediately cease the above unlawful practices, cease mislabeling and misbranding GNC's Magnesium Supplements, and provide Mr. Soto and all other United States purchasers of the Magnesium Supplements with full restitution of all improper revenues and ill-gotten profits derived from GNC's wrongful conduct to the fullest extent permitted by law. Further, GNC's misbranded Magnesium Supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements like Mr. Soto are entitled to a restitution refund of the purchase price of the misbranded supplements."

## CLASS ACTION ALLEGATIONS

### A.   The Classes

30.     Plaintiff brings this action on his own behalf and on behalf of the following Classes of persons pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3) an/or 23(c)(5):

> **Nationwide Class:** All persons in the United States who purchased Defendant's Magnesium Supplements during the four year period preceding the filing of the complaint.

> **Illinois Sub-Class:** All persons residing in Illinois who purchased Defendant's Magnesium Supplements during the four year period preceding the filing of the complaint.

31.     Any legal entity, Defendant and its employees or agents are excluded from the Class.

**B. Numerosity**

32. Upon information and belief, the Classes are so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, Plaintiff believes, and on that basis alleges, that GNC has sold its Magnesium Supplements to thousands of Illinois purchasers during the Class Period, thousands of more persons around the country and therefore there are thousands of members in the Classes.

**C. Common Questions of Law and Fact**

33. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. These questions include:

a. Whether Defendant labels, markets and otherwise advertises its Magnesium Supplements in a deceptive, false, or misleading manner by misstating the product's magnesium content;

b. Whether Defendant's sale of the Magnesium Supplements constitutes unfair methods of competition and unfair or deceptive acts or practices including: whether Defendant misrepresents the content, sponsorship, approval, or certification of their Magnesium Supplements; whether Defendant represents that the Magnesium Supplements are of a particular standard or quality if it is of another; and whether Defendant advertises its Magnesium Supplements with intent not to sell them as advertised;

c. Whether Defendant's sale of the Magnesium Supplements constitutes false, misleading and deceptive advertising;

d. Whether Defendant's sale of the Magnesium Supplements violates the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1,

*et seq.*;

e.    Whether Defendant's sale of the Magnesium Supplements constitutes a breach of warranty;

f.    Whether Defendant concealed material facts concerning the Magnesium Supplements;

g.    Whether Defendant engaged in unconscionable commercial practices in failing to disclose material information concerning the Magnesium Supplements;

h.    The nature and extent of damages, restitution, equitable remedies, and other relief to which Plaintiff and the Class are entitled; and

i.    Whether Plaintiff and the Classes should be awarded attorneys' fees and the costs of suit.

### D. <u>Typicality</u>

34.    The Plaintiff's claims are typical of the claims of the Classes since Plaintiff purchased the Magnesium Supplements within the last four years, as did each member of the Class. Furthermore, Plaintiff and all members of the Class sustained economic injuries arising out of Defendant's wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class members.

### E. <u>Protecting the Interests of the Class Members</u>

35.    Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor his counsel has any interest which might cause them not to vigorously pursue this action.

**F. Proceeding Via Class Action is Superior and Advisable**

36.     A class action is the superior method for the fair and efficient adjudication of this controversy.   The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.   It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.   Even if the members of the Class could afford such individual litigation, the court system could not.   Individualized litigation presents a potential for inconsistent or contradictory judgments.   Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.   By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.

37.     Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**Fraudulent Concealment**
**(Plaintiff on behalf of the Nationwide Class or in the alternative the Illinois Subclass)**

38.     Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

39.     By failing to disclose and concealing the contents of the Magnesium Supplements from Plaintiff and Class Members (i.e., the Magnesium Supplements do not include 400 mg of elemental magnesium per serving)   Defendant concealed and suppressed material facts concerning the Magnesium Supplements.

40.     Given its claimed practice of testing its products and verifying the claims made on

its labels, Defendant knew or should have known that the Magnesium Supplements did not contain the amount of magnesium d advertised and warranted and were not suitable for their intended use.

41.     Defendant was under a duty to Plaintiff and Class Members to disclose and/or not misrepresent the contents of the Magnesium Supplements because:

a.      Defendant was in a superior position to know the true state of facts about the magnesium contents of Defendant's Magnesium Supplements, including the amount of magnesium Defendant included in the Supplements;

b.      Plaintiff and Class Members could not reasonably have been expected to learn or discover that the Magnesium Supplements do not contain the amount of magnesium as advertised and warranted; and,

c.      Defendant knew that Plaintiff and Class Members could not reasonably have been expected to learn about or discover the true magnesium contents of Defendant's Magnesium Supplements.

42.     On information and belief, Defendant still has not made full and adequate disclosures, and continues to defraud consumers by concealing material information regarding the contents of the Magnesium Supplements.

43.     The facts concealed or not disclosed by Defendant to Plaintiff and Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Magnesium Supplements.

44.     Plaintiff and the Classes relied on Defendant to disclose material information it knew, such as the defective nature and contents of the Magnesium Supplements, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

45.     By failing to disclose the true contents of the Magnesium Supplements, Defendant

knowingly and intentionally concealed material facts and breached its duty not to do so.

46. Had Plaintiff and other Class Members known that Magnesium Supplements did not contain the amount of advertised and warranted magnesium, they would not have purchased the Magnesium Supplements or would have paid less for them.

47. As a result of Defendant's misconduct, Plaintiff and the other Class Members have been harmed and have been injured.

48. Accordingly, Defendant is liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

49. Defendant's actions and omissions were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being, to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

50. Furthermore, as the intended and expected result of its fraud and conscious wrongdoing, Defendant has profited and benefited from Plaintiff's and Class Members' purchases of falsely advertised and misbranded Magnesium Supplements. Defendant has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Defendant's misconduct alleged herein, Plaintiff and Class Members were not receiving Magnesium Supplements of the amount, nature, fitness, or value that had been represented by Defendant, and that a reasonable consumer would expect.

51. Defendant has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale of the Magnesium Supplements and by withholding benefits from Plaintiff and Class Members at the expense of these parties. Equity and good

conscience militate against permitting Defendant to retain these profits and benefits, and Defendant should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

## SECOND CAUSE OF ACTION
**Unjust Enrichment**
**(Plaintiff on behalf of the Nationwide Class or in the alternative the Illinois Subclass)**

52.     Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

53.     As a result of Defendant's fraudulent acts, and omissions related to the magnesium contents of the Supplement, Defendant obtained monies which rightfully belong to Plaintiff, and the Class Members to the detriment of Plaintiff and Class Members.

54.     Defendant appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and the proposed Class Members who, without knowledge of the true contents of the Supplements, paid a higher price for Supplements, which actually had lower values.  Defendant also received monies for Supplements that Plaintiff and the Class Members would not have otherwise purchased or leased.

55.     It would be inequitable and unjust for Defendant to retain these wrongfully obtained profits.

56.     Defendant's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

57.     As a result of Defendant's unjust enrichment, Plaintiff and Class Members have suffered damages.

58.     Plaintiff does not seek restitution under his Unjust Enrichment claim. Rather,

16

Plaintiff and Class Members seek non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

59. Additionally, Plaintiff and Class Members seek injunctive relief enjoining Defendant from further deceptive distribution and sales practices with respect to the Supplement, enjoining Defendant from selling the Supplement with misleading information concerning the Supplement's true magnesium content. Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

### THIRD CAUSE OF ACTION
**Breach of Express Warranty Pursuant to Pursuant to 810 Ill. Comp. Stat. Ann. 5/2-313**
**(Plaintiff Soto On Behalf of the Illinois Class)**

60. Plaintiff hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

61. Plaintiff and each member of the Class formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased one or more of Defendant's Magnesium Supplements. The terms of that contract include the promises and affirmations of fact made by Defendant on the packaging of the Magnesium Supplements regarding the products' magnesium content, and specifically that one serving of the product contains 400 mg of magnesium.

62. The Magnesium Supplements' packaging constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other.

63. All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

64. Defendant breached the terms of this contract, including the express warranties,

17

with Plaintiff and the Class by not providing the products that could provide the benefits promised, i.e. that the Supplements contain the warranted amount of magnesium, as alleged above.

65.     As a result of Defendant's breach of its contract, Plaintiff and the Class have been damaged in the amount of the different purchase price of any and all of the Magnesium Supplements they purchased and the price of a product which provides the benefits and contents as warranted.

<u>**FOURTH CAUSE OF ACTION**</u>
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**(815 ILCS 505/1, ET SEQ. and 720 ILCS 295/1A)**
**(Plaintiff Soto On Behalf of the Illinois Class)**

66.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

67.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including, but not limited to, the use of employment of any deception, fraud, false pretense, tales promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived, or damaged thereby." 815 ILCS 505/2.

68.     Defendant is a "person" as that term is defined in 815 ILCS 505/1(c).

69.     Plaintiff and Illinois Class members are "consumers" as that term is defined in 815 ILCS 505/1(e).

70.     The allegations set forth herein constitute false, misleading, or deceptive trade acts or practices.

71.     At all material times, Defendant engaged in a scheme of offering the Magnesium

Supplements for sale to Plaintiff, and other members of the Class by way of, inter alia, commercial marketing, and advertising, internet content, product packaging and labelling, and other promotional materials.

72. These materials, advertisements and other inducements misrepresented and/or omitted the true contents of the Magnesium Supplements as alleged herein, including the amount of magnesium contained in one serving of the Supplements. Such advertisements and inducements appear on the labels of Defendant's Magnesium Supplements and Defendant's website.

73. Defendant knew, or in the exercise of reasonable care should have known, that the statements regarding its Magnesium Supplements' magnesium content, and specifically the amount of magnesium contained in the Supplements, were false, misleading and/or deceptive.

74. Consumers, including Plaintiff and members of the Class, necessarily and reasonably relied on Defendant's statements regarding the contents of its products. Consumers, including Plaintiff and members of the Class, were among the intended targets of such representations.

75. The above acts of Defendant, in disseminating said misleading and deceptive statements to consumers, including Plaintiff and members of the Class, were and are likely to deceive reasonable consumers by obfuscating the true nature and amount of the ingredients in Defendant's Magnesium Supplements, including the true amount of magnesium, and constitute unfair and deceptive acts and practices and materially misleading advertising.

76. Plaintiff and Class members were harmed and suffered injury as a result of Defendant's conduct. Defendant has been unjustly enriched at the expense of Plaintiff and the members of the Class.

77. Accordingly, Plaintiff and members of the Class seek damages including full

restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law. Misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a restitution refund of the purchase price of the misbranded supplements.

78.     Defendant's violations present a continuing risk to Plaintiff as well as the other Class Members and the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

**FIFTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability Pursuant to**
**810 ILCS §§ 5/2-314**
**(Plaintiff Soto On Behalf of the Illinois Class)**

79.     Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

80.     Defendant was at all relevant times a "merchant" with respect to the Supplements under 810 ILCS §§ 5/2-104(1) and a "seller" of Supplements under § 5/2-103(1)(d).

81.     The Supplements and were at all relevant times "goods" within the meaning of 810 ILCS §§ 5/2-105(1).

82.     A warranty that the Supplements were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to 810 ILCS §§ 28-2-314 and 28-12-212.

83.     Defendant breached the implied warranty of merchantability in that the Magnesium Supplements do not contain the amount of advertised magnesium or the benefits associated with the advertised 400 mg of elemental magnesium per serving and thus were not in merchantable

condition when Plaintiff and Class Members purchased them, or at any time thereafter, and they were unfit for the ordinary purposes for which such nutritional supplements are used.

84.     Defendant has breached the implied warranty of merchantability because the Magnesium Supplements when sold would not pass without objection in the trade.

85.     As a result of Defendant's breach of the applicable implied warranties, purchasers of the Magnesium Supplements suffered an ascertainable loss, were harmed, and suffered actual damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendant as follows:

a.  An order certifying the proposed Classes, designating Plaintiff as named representative of the Classes, and designating the undersigned as Class Counsel;;

b.  An order awarding Plaintiff and class members their actual damages, incidental and consequential damages, punitive damages, statutory damages and/or other form of monetary relief provided by law;

c.  An order awarding Plaintiff and the class restitution, disgorgement, or other equitable relief as the Court deems proper;

d.  An order enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

e.  Reasonable attorneys' fees and costs;

f.  Pre-judgment and post-judgment interest, as provided by law;

g.  Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: May 3, 2024                     PLAINTIFF, Ramon Soto

                          By:    */s/ Sergei Lemberg*
                                 Sergei Lemberg

                                 **Chicago Office**:
                                 LEMBERG LAW, LLC
                                 444 North Michigan Avenue
                                 Suite 1200
                                 Chicago, IL 60611

                                 **<u>Main Office</u>**:
                                 43 Danbury Road
                                 Wilton, CT 06897
                                 Telephone: (203) 653-2250
                                 Facsimile:   (203) 653-3424
                                 slemberg@lemberglaw.com
                                 *Attorneys for Plaintiff*