IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Ramon Soto, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 24-CV-3613 |
| v. ) | |
| ) | Honorable Joan B. Gottschall |
| GNC Holdings, LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

In this proposed national class action, plaintiff Ramon Soto alleges that defendant GNC Holdings, LLC ("GNC"), manufactures, markets, and sells a line of "Super Magnesium" dietary supplements bearing labels falsely stating that a two-caplet serving contains "400 (milligrams) of elemental magnesium." Compl. ¶ 1; *see also* Compl. ¶¶ 9–10 (describing labels). According to the complaint, ¶ 2, "Plaintiff's counsel's independent investigation reveals the Supplements contain approximately 152 mg of elemental magnesium per serving." GNC has filed two motions challenging the complaint's sufficiency. The court reaches only GNC's jurisdictional argument that Soto lacks Article III standing. For the reasons explained herein, Soto has not adequately pleaded that he purchased at least one defective product, so he has failed to allege plausibly the first standing element, namely that he suffered a concrete and particularized injury in fact.

**I. T**HE **C**OMPLAINT

According to the complaint, the allegations of which the court accepts as true for present purposes, Soto lives in Chicago. Compl. ¶ 4. He "has purchased GNC's Super Magnesium Supplement within the last four years, including at a GNC retail store in Chicago." Compl. ¶ 4. Soto viewed the front and back labels each time he purchased a bottle of GNC's Super

Magnesium supplements. Compl. ¶ 4. The complaint includes the following picture of the bottle's front label:



Compl. ¶ 9. The product's back label states that a two-caplet serving contains "'400 mg' of 'Magnesium (as Aspartate, Lactate and citrate).'" Compl. ¶ 10 (footnote omitted) (quoting "Supplement Facts" label). Soto alleges that this labelling constitutes a "claim" that each two-caplet serving contains "400 mg of elemental magnesium." Compl. ¶ 11.

Soto alleges that reasonable consumers are being "materially misled" by GNC's representations about the amount of magnesium in a two-caplet serving. Compl. ¶ 25. The complaint charges that "[i]ndependent testing reveals the Supplements contain approximately 5.85% elemental magnesium by mass." Compl. ¶ 15. He multiplies that percentage by the mass

2

of two caplets (2,600 mg) and concludes that "one 2-caplet serving of the Supplements contains approximately 152 mg of elemental magnesium, not 400 mg of magnesium as advertised." Compl. ¶¶ 16–17.  The complaint does not provide any details on the independent testing, such as when it occurred, who conducted it, or what methodology was used.  *See* Compl. ¶¶ 13–17.  Soto does not allege that any supplement he personally purchased was tested.  *See* Compl. ¶¶ 13–28.

The complaint has five counts arising under state law: (1) fraudulent concealment; (2) unjust enrichment; (3) breach of express warranty; (4) a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 to 505/12; and (5) breach of the implied warranty of merchantability.  *See* Compl. ¶¶ 39–85.  Soto brings counts III and V under Illinois' codification of the Uniform Commercial Code.  *See* 810 ILCS 5/2-313 and 2-314 (West 2024).

Soto bases this court's subject matter jurisdiction on the Class Action Fairness Act, 28 U.S.C. § 1332(d).  He proposes to represent a nationwide class and an Illinois subclass of persons who purchased GNC's magnesium supplements within four years of the date on which the complaint was filed.  *See* Compl. ¶¶ 30–37.

## II. MOTION STANDARD AND STANDING PRINCIPLES

GNC moves separately to dismiss, ECF No. 10, the complaint, and to strike ECF No. 11, its class action allegations.  In its motion to dismiss, GNC challenges the complaint's sufficiency on the merits and on the jurisdictional ground that it fails to establish that Soto has standing under Article III of the Constitution.  Article III limits the jurisdiction of the federal courts to "cases" and "controversies."  U.S. Const. Art. III, § 2, cl. 1.  The doctrine of standing enforces this case or controversy requirement.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–62 (1992).  Because Article III standing is an essential requirement for subject matter jurisdiction, standing must be established before the

3

court can reach merits issues, including GNC's motion to dismiss the complaint for failure to state a claim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1992).

"At least one named plaintiff must have standing for a class action to proceed." *Montoya v. Jeffreys*, 99 F.4th 394, 399 (7th Cir. 2024) (citing *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 676–77 (7th Cir. 2009)). As the sole named plaintiff, Soto must therefore demonstrate that he has standing; he "cannot 'piggy-back on the injuries of the unnamed class members.'" *Tex. Hill Country Landscaping, Inc. v. Caterpillar, Inc.*, 522 F. Supp. 3d 402, 408 n.3 (N.D. Ill. 2021) (quoting *Payton v. Kane Cnty.*, 308 F.3d 673, 682 (7th Cir. 2002)). To establish standing, Soto "must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Alicea v. Cook Cnty.*, 88 F.4th 1209, 1215 (7th Cir. 2023) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)).

To assess whether the complaint adequately alleges the elements of standing, the court employs "the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) (citations omitted). Under this standard, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 173–74 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court presumes the truth of all well-pleaded facts in the complaint, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

### III. ANALYSIS

GNC argues that the complaint does not adequately plead that Soto suffered an injury in fact. "At the pleading stage, 'general factual allegations of injury resulting from the defendant's

conduct may suffice.'" *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 801 (7th Cir. 2016) (quoting *Lujan*, 504 U.S. at 561). GNC cites several out-of-circuit product mislabeling decisions dismissing a complaint for failure to establish the individual plaintiff's standing to sue. These cases hold that where there is no allegation that a product purchased by the named plaintiff was tested for a non-obvious defect, the complaint must include well-pleaded factual allegations "explaining why a third party's analysis [of a tested sample product] can be reasonably extrapolated to the plaintiff's individual purchase." *Lurenz v. Coca-Cola Co.*, 2024 WL 2943834, at *3 (S.D.N.Y. June 10, 2024) (quoting *Kell v. Lily's Sweets, LLC,* 2024 WL 1116651, at *5 (S.D.N.Y. Mar. 13, 2024); other citations omitted); *accord Esquibel v. Colgate-Palmolive Co.*, 2023 WL 7412169, at *2 (S.D.N.Y. Nov. 9, 2023); *Onaka v. Shiseido Ams. Corp.*, 2023 WL 2663877, at *4 & n.3 (S.D.N.Y. Mar. 28, 2023). Because these cases are consistent with Supreme Court and Seventh Circuit standing jurisprudence, and because Soto cites no contrary standing authority, this court finds the cases GNC cites persuasive and adopts their reasoning.

It bears emphasizing that the named plaintiff need not necessarily purchase a product and test it to establish standing. Nor is the plaintiff required to attach test results to the complaint. For example, well-pleaded allegations plausibly showing that the defect was so widespread that it is reasonable to believe the named plaintiff bought at least one defective product have been held sufficient to plead an injury in fact. *See, e.g.*, *Winans v. Ornua Foods N. Am. Inc.*, 731 F. Supp. 3d 422, 428–29 (E.D.N.Y. 2024); *Levy v. Hu Prods. LLC*, 2024 WL 897495, at *3–4 (S.D.N.Y. Mar. 1, 2024); *Brown v. Coty, Inc.*, 2024 WL 894965, at *3 (S.D.N.Y. Mar. 1, 2024).

In this case, Soto's complaint includes no well-pleaded facts showing that the alleged defect in GNC's magnesium supplements was widespread. *See* Compl. ¶¶ 2–28. Also, the complaint does not say when the independent testing occurred, leaving the reader to speculate about whether days, months, or years intervened between the testing and Soto's purchases. *See* Compl. ¶¶ 13–18. Without more, Soto's unadorned allegation that "independent testing" conducted at an unspecified time in an unspecified manner identified a product defect does not

5

satisfy the plausibility standard because such "sparse factual allegations make it equally plausible that the single test result was a false positive or was the result of an isolated incident." *Lurenz*, 2024 WL 2943834, at *3 (internal quotation omitted). The complaint does not plausibly allege that Soto suffered a concrete and particularized injury in fact.

Resisting this conclusion, Soto argues that two decisions in this district adopt a more lenient standard for pleading an injury in fact in a product defect case like this one. *See* Mem. Resp. Mot. to Dismiss 7–9. In the first case, *Gubala v. CVS Pharmacy, Inc.*, the plaintiff attached "to the amended complaint the result of what appears to be a single test on a single sample of the Product," that product being protein powder. 2016 WL 1019794, at *7 (N.D. Ill. Mar. 15, 2016). The court did not analyze the plaintiff's standing or whether the complaint adequately alleged that the plaintiff was injured. *See id.* The cited portion of the opinion analyzes whether federal law preempted the plaintiff's claims. *See id.* at *7–8. Similarly, the court in *Muir v. NBTY, Inc.*, 2016 WL 5234596, at *8 (N.D. Ill. Sept. 22, 2016), observed that the plaintiff tested the product at issue "in May and June 2015, well before Plaintiff made his purchase in July 2015." The court made this point about the timing of tests and the plaintiffs purchase while analyzing a merits question: whether the plaintiff was aware of the test results when he bought the product. *See id.* As the court explained, if the plaintiff was aware of the results, "he was either very foolish or attempting to purchase a lawsuit." *Id.*

The *Gubala* and *Muir* courts did not analyze the plaintiff's standing. And neither court purported to adopt a standard for pleading an injury in fact (or an injury on the merits). For these reasons, neither case persuades this court that Soto's complaint adequately alleges an injury in fact. *Cf. Tate v. Showboat Marina Casino P'ship*, 431 F.3d 580, 581 (7th Cir. 2005). Having ruled that the complaint does not adequately allege the threshold jurisdictional requirement of standing, the court does not reach GNC's arguments for dismissing the complaint on the merits or GNC's motion to strike the complaint's class action allegations.

## IV. CONCLUSION

For the reasons stated, defendant's motion to dismiss the complaint for failure to establish plaintiff's standing under Article III of the Constitution is granted. Defendant's motion to dismiss the complaint on the merits and its motion to strike the complaint's class action allegations are denied without prejudice. If he wishes to do so, plaintiff is given twenty-one days, until and including March 21, 2025, to file an amended complaint.

Date: February 28, 2025 /s/ Joan B. Gottschall
United States District Judge